## B. Shoninger Company v. Edward Mann, by next friend.
### Gen. No. 11,875.

1. ELEVATOR SHAFT—*obligation of owner of building to guard.* It is the duty of the owner of a building properly to guard and protect the elevator shaft therein, and if such owner fails to discharge that duty and an injury is sustained by the tenants or employes of the tenants, or other persons rightfully upon the premises, from such failure of duty, the owner is liable therefor, and this notwithstanding contract arrangements existing with third parties.

2. CONTRIBUTORY NEGLIGENCE—*how question of, determined.* The question of contributory negligence is to be determined by the jury as a question of fact, where the evidence is conflicting or is susceptible of different interpretations.

3. AMENDMENT—*when, permitted on trial not ground ₁of complaint.* Where the amendment permitted on the trial and claimed as a surprise, did not add anything to the declaration, no ground of complaint can be urged.

4. VERDICT—*when not excessive.* A verdict of $10,000 is not excessive where the plaintiff, a boy of the age of about 16 years, received injuries which destroyed his future and rendered him a helpless invalid for the remainder of his life.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JOHN L. HEALY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Affirmed. Opinion filed June 20, 1905.

**Statement by the Court.** This is an action on the case commenced by Edward Mann, a minor sixteen years old, by Alexander Mann, his next friend, against B. Shoninger Company for injuries sustained by the plaintiff, appellee, by falling into an elevator shaft at 267 Wabash avenue, Chicago, on the 10th day of December, 1901. The declaration consists of two counts. The first count avers that the plaintiff was a minor sixteen years old and a servant of Thompson & Thomas. He was engaged near the elevator shaft of the defendant's premises in the performance of his duties; that the defendant carelessly and negligently left the elevator shaft on the first or ground floor of said building unguarded and unprotected, and that the plaintiff, while in the exercise of ordinary care for his own safety, fell into said shaft and was injured. The second count avers the same facts and in addition thereto that the elevator shaft was provided with a wooden door which when pulled down closed the shaft, and that the defendant carelessly and negligently failed to push said door down so as to cover said shaft and moved said elevator away from said floor carelessly and negligently without notice or warning to the plaintiff and carelessly and negligently left said shaft open and unprotected.

The evidence shows that defendant, appellant, was, on the

10th day of December, 1901, occupying said premises and operating said elevator under a lease from Lewis S. Perry, as trustee, and in his own right; that appellant had sub-let various portions of the building to different tenants, and that at the time of the accident in question The Thompson Music Company occupied the south half of store and basement of the building, Kurz & Allison occupied the third floor; that Thompson & Thomas occupied the second and fourth floors of the building. The building faces east on Wabash avenue and along the west or rear end of the building runs north and south an alley. The elevator shaft was at the rear end of the building about six feet from the alley, and there was a passage from the alley to the elevator about six feet long. The elevator ran from the basement to the fourth floor of the building. The elevator and the entrance leading thereto was not demised to any of the tenants. It remained under the control of defendant for the benefit of the tenants of the building by whom it was used. The lease of appellant to Thompson & Thomas provided, "that the party of the second part shall have the use of the freight elevator in common with other tenants in the building in which the demised premises form a part." Thompson & Thomas took possession of their part of the building on May 1, 1900, and continued in possession until May 1, 1902. No regular man was in charge of the elevator prior to May 15, 1901. On that date, appellant took exclusive possession of the elevator, the steam heating plant and the passageways and halls. After that date, the tenants of appellant had nothing to do with the management of the building, the steam heating plant or the operation of the elevator.

Appellee had worked for Thompson & Thomas two or three weeks at the time of the accident. He had made two trips on the elevator before the accident, one about a week before he commenced working for Thompson & Thomas, and the other a few days before the accident. He was employed as an errand boy to assist in handling and delivering packages of books. Appellee and some other boys working for the same firm were instructed just before the accident to

take some packages of books to the entry way to the elevator and there to deliver them to various express companies. They placed the packages of books on the elevator and descended on the elevator with the packages of books to the main floor, and the books were taken off the elevator and placed in the entry way. When the Wells Fargo Express Co. man called, appellee started to look for one of the packages. It was about 5:30 P. M. and at that hour on December 10, 1901, it was dark. No light was maintained in the entry way. The boys had with them an ordinary barn lantern with a reflector on the back of it, and bull's-eye in the front. At the time appellee fell this lantern was held by another boy who was looking for packages on the other side of the entry way, and appellee was facing south, but moving toward the east, looking for a package. Palmer, who was in charge of the elevator for appellant, had taken the elevator up after the packages had been placed in the entry, leaving the elevator shaft unprotected, but appellee had not noticed this movement of the elevator and supposed it was still there. Appellee's foot accidentally slipped and he fell towards and into the shaft, receiving the serious injuries complained of. There was a wooden door to the elevator shaft, but at the time of the accident, and for many months prior thereto, the door did not work and the shaft had been left unguarded and unprotected in any way.

The results of the fall were that the entire nervous system of the plaintiff was seriously injured and the plaintiff is suffering from constipation, diabetes and blood in the urine, and total blindness of the left eye. These conditions are incurable and permanent and the plaintiff cannot live many years. Before the accident he was strong and healthy and had never been sick.

The jury returned a verdict in favor of the plaintiff for $10,000. The court overruled a motion for a new trial and entered judgment on the verdict.

ROSENTHAL, KURZ & HIRSCHL, for appellant.

ARNOLD HEAP and DAVID K. TONE, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

No question is made here as to the manner or the fact of the injury received by the plaintiff, nor is there any controversy as to the extent of the injury. It is contended, however, that under the pleadings and the evidence there should have been no recovery against the defendant.

It is not strongly insisted by counsel for appellant that appellant was not guilty of negligence in permitting the elevator shaft to remain open and unguarded and the entry way dark and without any light. The state of the record is such, however, that appellant is here insisting that appellee was guilty of contributory negligence, while not much is said touching appellant's negligence. The evidence is undisputed that at the time of the accident, appellant was in possession of the entire building, subject, of course, to the rights of its tenants. Appellant was in full possession and control of the halls, entry ways, steam heating plant, and elevator, and was operating the elevator for the benefit of itself and its tenants. Under such circumstances it was undoubtedly the duty of appellant properly to guard and protect the elevator shaft, and if it failed to discharge that duty and any injury was sustained by the tenants or employees of the tenants, or other persons rightfully upon the premises, through such failure of duty, appellant is liable therefor. Payne v. Irvin, 144 Ill., 482; The People's Bank, etc., v. Morgolofski, 75 Md., 432; Mauzy v. Kinzel, 19 Ill. App., 571; Fisher v. Cook, 23 Ill. App., 621. This duty was not in the least affected by its contracts with persons other than appellee, such as the provision in the lease between appellant and Thompson & Thomas, appellee's employers, to which appellee was not a party. Springer v. Ford, 189 Ill., 430. No question is made by the evidence that this duty was performed. It is admitted that the entry way was dark and unlighted by appellant, and that the elevator shaft was left without any guard or protection. This in our opinion was gross negligence. Unless, therefore, appellee was guilty of contributory negligence, appellant is liable for appellee's injuries. This question will now be considered.

Whether the plaintiff was exercising ordinary care at the time of the accident should be considered with reference to what he was doing and the conditions in which he was placed. The evidence showed that he was engaged actively in the discharge of his duties; that the place was dark, too dark to read writing readily, even with a lantern. The entry was unlighted in any way by appellant. Plaintiff and the boys working with him had one lantern. This was in the hands of one of the other boys. At the time of the accident the light was turned toward the alley and it was dark in and about the shaft. Plaintiff was sixteen years of age. While thus engaged and under these conditions plaintiff slipped and fell toward and into the elevator shaft.

As stated by appellant's counsel in their brief, there is no conflict in the evidence. The question then is, under this evidence, was the plaintiff guilty of negligence *per se* so that the court can pronounce it such as a legal conclusion and not as a mere deduction from the evidence? That is in substance the contention of appellant. But whether he was negligent or not was a question of fact for the jury, we think, under the facts here shown; and we do not think there is such clear and undisputable negligence shown, contributing to the injury as would have justified the court below in holding that contributory negligence was proved, and in instructing the jury on that basis and consequently the question was properly left to the jury to determine as a question of fact. Ames & Frost Co. v. Strachurski, 145 Ill., 192; Rosenbaum v. Shoffner, 98 Tenn., 624; Village of Cullom v. Justice, 161 Ill., 372; Mauzy v. Kinzel, 19 Ill. App., 573.

The question of negligence, both on the part of the plaintiff and defendant, was for the jury to determine from all the evidence, and we are unable to say that their verdict is not fully supported by it.

The question of assumption of risk by the plaintiff is argued extensively by counsel for appellant. We do not regard that question as in the case for obvious reasons. Hence, we do not discuss it, or the cases cited growing out of the contractual relations of master and servant.

Appellant claims that it was surprised by the amendment to the declaration made by leave of court during the trial, and that its application for a continuance should have been granted. During the trial there was inserted in the first count of the declaration after the word "eyes" near the end of the count the following words: "And thereby plaintiff's liver, kidneys, nervous system and brain were permanently injured."

In our opinion appellant was not prejudiced by the amendment for the reason that the declaration, as it stood before the amendment, permitted a recovery for every ailment proved on the trial. The amendment added nothing to the declaration. L. S. & M. S. Ry. Co. v. Ward, 135 Ill., 511; Baltimore & O. S. W. R. R. Co. v Slanker, 180 Ill., 357.

Appellant urges that the damages awarded by the jury are excessive. With this contention we do not agree. The uncontradicted evidence in the record shows that the injuries suffered by the plaintiff are of the most serious character, and that they are permanent. His entire future is destroyed. He can never be of any use to himself or any other person. As a result of the accident he is and must remain an invalid all his life. We cannot say that the verdict is excessive.

Finding no error in the record the judgment is affirmed.

*Affirmed.*